UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BERKLEY INSURANCE COMPANY,

                          Plaintiff,

      -against-

PRIME INSURANCE COMPANY,

                         Defendant.
------------------------------------------------------------X
PRIME INSURANCE COMPANY,

                    Third-Party Plaintiff,

      -against-

EXTREME RESIDENTIAL CORP., EXTREME
CONSTRUCTION, INC., ATLANTIC CRANE
LLC, ROCKAWAY BEACH BLVD.
CONSTRUCTION CO., LLC, BENJAMIN
BEECHWOOD TIDES 2, LLC, BENJAMIN
BEECHWOOD OCEAN WAY, LLC,
MARTA MARTINS AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF JOSE
MARTINS, deceased, MARTA MARTINS, and
IAGO MARTINS, STATE INSURANCE FUND
AND AVERNE BY THE SEA, LLC,

                    Third-Party Defendants.
------------------------------------------------------------X

|  |  |
|---|---|
| MEMORANDUM | |
| AND ORDER | |
| 20 CV 2249 (RML) | |

LEVY, United States Magistrate Judge:

         The parties to this declaratory judgment action move for partial summary

judgment.  For the reasons stated below, the motions are granted in part and denied in part.

## BACKGROUND

         Plaintiff Berkley Insurance Company ("Berkley") commenced this declaratory

judgment action on May 19, 2020 against defendant Prime Insurance Company ("Prime").

(Complaint, filed May 19, 2020, Dkt. No. 1.)  The action arises out of an insurance dispute related to an underlying personal injury action ("underlying action") brought by the Estate of Jose Martins, Jose Martins' spouse, Marta Martins, and Jose Martins' adult son, Iago Martins ("underlying plaintiffs") against several commercial entities involved in the management of a residential construction project: Averne By the Sea – Tides Project ("Tides Project").  (Id. ¶ 1.)

The alleged facts of the underlying action are as follows: on July 30, 2019, two employees of Extreme Residential Corp. ("Extreme Residential"), Jose Martins and Iago Martins (together, the "Martins"), were involved in a workplace accident ("Martins' accident") at the Tides Project resulting in Jose Martins' death and injury to Iago Martins.  (Berkley's Rule 56.1 Statement of Material Facts, dated Oct. 7, 2022 ("Berkley 56.1"), Dkt. No. 116-1, ¶ 11.)  The two men were working on installing prefabricated panels throughout the building.  (Id.)  The underlying plaintiffs allege that, at the time of the accident, a panel being lifted by a crane leased from Atlantic Crane, LLC ("Atlantic Crane") and operated by a worker employed by Atlantic Crane struck a previously installed panel, causing it to fall on the Martins.  (Id.)  This was the alleged cause of Jose Martins' death and Iago Martins' injuries.

On July 31, 2019, the day after the accident, an email was sent by a Prime employee to numerous recipients acknowledging the incident.  (Id. ¶ 27; see also Prime Email, attached as Ex. N to Berkley's Memorandum in Support of its Motion for Partial Summary Judgment, dated July 31, 2019, Dkt. No. 116-17.)  It is undisputed that Prime disclaimed coverage by letter dated March 11, 2020, two months after the initial suit was filed but nearly eight months after initial notice of the occurrence was given.  (See Extreme Residential's Rule 56.1 Statement of Material Facts, dated Oct. 7, 2022 ("Extreme 56.1"), Dkt. No. 114-1, ¶ 40; see

2

<u>also</u> Prime's Response to Extreme Residential's Rule 56.1 Statement of Material Facts, dated Nov. 18, 2022 ("Prime Resp. to Extreme 56.1"), Dkt. No. 122, ¶ 40.)

Operative at the time of the accident were two insurance policies: one issued by Prime (the "Prime Policy"), and another issued by Berkley (the "Berkley Policy").  The Named Insured on the Prime Policy is Extreme Residential, a subcontractor hired for the Tides Project. (Extreme 56.1 ¶ 4; Prime Resp. to Extreme 56.1 ¶ 4.)  Named as additional insureds by way of Endorsements on the Prime policy are several of the commercial entities named as defendants in the underlying action, including Benjamin Beechwood Ocean Way, LLC ("Ocean Way"); Rockaway Beach Blvd. Construction Co. ("Rockaway"); and Averne By The Sea, LLC ("Averne") (together, the "Beechwood Entities").  (Extreme 56.1 ¶ 5; Prime Resp. to Extreme 56.1 ¶ 5.)  After Prime disclaimed coverage with respect to the underlying action, Berkley, which had issued a separate policy to the Beechwood Entities, undertook the defense of the Beechwood Entities.  (Berkley 56.1 ¶ 90.)

Berkley initiated the instant action against Prime seeking a declaratory judgment on three issues: (1) that the Beechwood Entities are additional insureds under the Prime Policy with respect to the underlying action; (2) that Prime is obligated to defend the Beechwood Entities in the underlying action; and (3) that Prime is obligated to reimburse Berkley for its defense of the Beechwood Entities.  Prime then filed a Third-Party Complaint seeking a declaratory judgment against Atlantic Crane, Extreme Residential, and the Beechwood Entities stating that Prime does not owe any of these entities a duty to defend and/or indemnify under the Prime Policy with respect to the underlying action.  (<u>See</u> Third Party Complaint, filed July 29, 2020, Dkt. No. 20.)  Extreme Residential, Atlantic Crane, and the Beechwood Entities asserted counterclaims against Prime related to Prime's duty to defend them in the underlying action and

damages to remedy Prime's alleged breach of the Prime Policy, among other things.  (See Answer to Amended Third Party Complaint and Counterclaim, filed Dec. 11, 2020, Dkt. No. 52; Answer to Amended Third Party Complaint and Counterclaim, filed Dec. 11, 2020, Dkt. No. 50; Answer to Amended Third Party Complaint and Counterclaim, filed Dec. 11, 2020, Dkt. No. 53.) The parties now move for summary judgment on these claims.

STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is material where it "might affect the outcome of the suit under the governing law" and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party carries the initial burden of showing that there is no genuine dispute of material fact. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018).  However, where the burden of proof at trial would fall on the non-moving party, the moving party may shift its initial burden by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has satisfied its initial burden, the non-moving party must put forth specific facts showing that there is a genuine issue of material fact to be tried. Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996).  While the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) (citations and

4

internal quotation marks omitted).  If the moving party meets its burden in establishing the

absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to

record evidence creating a genuine issue of material fact."  Salahuddin v. Goord, 467 F.3d 263,

273 (2d Cir. 2006).  The non-moving party must provide "affirmative evidence" from which a

jury could return a verdict in its favor.  Anderson, 477 U.S. at 257.  "Conclusory allegations,

conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  Niagara

Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v.

Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)).  Moreover, "[t]he 'mere existence of a scintilla

of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment."

Id. (quoting Anderson, 477 U.S. at 252).

**LEGAL STANDARD**

### I.    Duty to Defend

Under New York law, an insurer's duty to defend arises "whenever the

allegations in a complaint state a cause of action that gives rise to the reasonable possibility of

recovery under the policy."  Stein v. Northern Assur. Co. of Am., 617 F. App'x 28, 30 (2d Cir.

2015) (quoting Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435

(N.Y. 2002)).  To ascertain whether an insurer has a duty to defend, the allegations in the

complaint are compared to the wording of the insurance contract.  See id.  To avoid the duty to

defend, an insurer must show that "there is no legal or factual allegation in the underlying

complaint for which the insurer might eventually have to indemnify the insured."  Com. Union

Assur. Co., PLC v. Oak Park Marina, Inc., 198 F.3d 55 (2d Cir. 1999).  Where there is any

ambiguity in the policy, the ambiguity is resolved against the insurer.  See id.  An insurer's duty

to defend is "exceedingly broad."  Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136,

5

141 (2d Cir. 2014) (quoting <u>Auto. Ins. Co. of Hartford v. Cook</u>, 850 N.E.2d 1152, 1155 (N.Y. 2006)).

"Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." <u>Consol. Edison Co. of New York v. Allstate Ins. Co.</u>, 774 N.E.2d 687, 690 (N.Y. 2002). Where the basis for relief from the duty to defend is a policy exclusion, "the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion . . . ." <u>Stein</u>, 617 F. App'x at 30 (quoting <u>Frontier Insulation Contractors v. Merch. Mut. Ins. Co.</u>, 91 N.Y.2d 169 (N.Y. 1997)); <u>see also</u> <u>Com. Union Assur. Co</u>, 198 F.3d at 60-61 ("To show that an exclusion abrogates coverage, the insurer bears the burden of proving that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case. This burden is heavy, especially when the insurer is seeking to avoid the duty to defend.") (internal quotation marks and citation omitted).

Thus, the duty to defend holds unless the insurer can show that "'the allegations, *in toto*, are subject to no other interpretation'" than the one put forth by the insurer. <u>Technicon Elecs. Corp. v. Am. Home Assur. Co.</u>, 542 N.E.2d 1048, 1050 (N.Y. 1989) (quoting <u>Int'l Paper Co. v. Cont'l Cas. Co.</u>, 320 N.E.2d 619 (N.Y. 1974)). The exceedingly broad duty to defend applies in full force not only to the named insured on the insurance policy but also to any additional insureds. <u>See</u> <u>Regal Const. Corp. v. Nat'l Union Fire. Ins. Co. of Pittsburgh, PA</u>, 930 N.E.2d 259, 261 (N.Y. 2010).

## II.    <u>Disclaimer of Coverage</u>

New York Insurance Law § 3420(d) imposes an affirmative obligation on an insurer denying coverage to "disclaim liability or deny coverage for death or bodily injury

arising out of . . . any . . . accident occurring within [New York]." Maxum Indem. Co. v. Oxford Interior Corp., 443 F. Supp. 3d 348, 351 (E.D.N.Y. 2020) (citing N.Y. INS. L. § 3420(d)(2)). This notice must be provided in writing "as soon as is reasonably possible." Id. An insurer's duty to timely disclaim begins to run "from the time that the insurer has sufficient information to disclaim coverage in good faith." United Specialty Ins. Co. v. Premier Contracting of New York, Inc., 375 F. Supp. 3d 389, 398 (S.D.N.Y. 2019) (citing Webster ex rel. Webster v. Mt. Vernon Fire Ins. Co., 368 F.3d 209, 216 (2d Cir. 2004)). This obligation applies not only to the named insured but also to additional insureds. See generally Maxum Indem. Co., 443 F. Supp. 3d 348.

Though there is room for the insurer to conduct an investigation, the investigation must be "prompt, thorough, and diligent." United Specialty Ins. Co., 375 F. Supp. 3d at 398 (quoting U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004)). Although reasonableness of delay is challenging to decide as a matter of law, the general rule is that "'disclaimers beyond the 30-day point are generally treated as untimely' unless the insurer establishes a suitable justification." United Specialty Ins. Co., 375 F. Supp. 3d at 398 (quoting Century Sur. Co. v. EM Windsor Constr. Inc., No. 16 CV 4196, 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017)). An investigation can be grounds for justification, but the delay must nonetheless be reasonable. See id.

"[W]hen a claim falls outside the scope of the policy's definition of coverage," no 3420(d) disclaimer is required. Id. Imposing a requirement to disclaim where no coverage existed in the first place would "create coverage where it never existed." Id. However, a timely disclaimer is required where "a claim falls within the coverage terms but is denied based on a policy exclusion." Markevics v. Liberty Mut. Ins. Co., 97 N.Y.2d 646, 648-49 (2001). "Failure

to provide a Section 3420(d) disclaimer precludes denial of coverage based on a policy exclusion."  Britt v. Gen. Star Indem. Co., 494 F. App'x 151, 152-53 (2d Cir. 2012).

**DISCUSSION**

**I.    Extreme Residential and Prime's Cross-Motions for Summary Judgment**

Extreme Residential moves for partial summary judgment declaring that (1) Prime must defend Extreme Residential in the underlying action;[1] (2) Prime is statutorily estopped under New York Insurance Law § 3420(d)(2) from disclaiming coverage to Extreme Residential; and (3) Prime must pay the reasonable attorney's fees and costs that Extreme Residential has incurred in this action.  (Memorandum of Law of Extreme Residential, filed Oct. 7, 2022 ("Extreme Mem."), Dkt. No. 114-2, at 1.)  Prime moves for summary judgment declaring that (1) it has no duty to defend Extreme Residential under the Prime Policy; and (2) it has no duty to pay Extreme Residential's attorney's fees in this action.  (Prime's Memorandum of Law, filed Oct. 7, 2022 ("Prime Mem."), Dkt. No. 115-2, at 15.)

   A.  Prime's Duty to Defend Extreme Residential

Extreme Residential asserts that the claims alleged in the underlying action fall squarely within the "Bodily Injury" coverage provided under the Prime Policy and, therefore, that Prime has a duty to defend it in the underlying action.[2]  (See Extreme Mem. at 7.)  Prime

---

[1] Extreme Residential does not move for summary judgment related to Prime's duty to indemnify because the issue is premature.  (Transcript of Oral Argument, filed Apr. 3, 2023 ("Tr."), Dkt. No. 145, at 7 ("[t]here has been no resolution in the underlying case, it's uncertain at this point as to whether there will be any liability and if any, in what amount.  And until those issues are resolved, any resolution of the duty to indemnify in this case would be premature.))

[2] Section I of the Prime Policy contains a general statement of coverage:

   [Prime] will pay Damages that you are legally obligated to pay because of Bodily Injury or Property Damage.  Coverage is provided only for Claims for Bodily Injury or Property Damage if: a. the Bodily Injury or Property Damage is caused

(Continued . . .)

acknowledges that it has been and continues to provide Extreme Residential with a courtesy defense in the underlying action despite having disclaimed coverage. (Prime's Memorandum of Law in Opposition to Extreme Residential's Motion for Summary Judgment, filed Nov. 18, 2022 ("Prime Mem. in Opp. to Extreme"), Dkt. No. 122-1, at 4.) Nevertheless, Prime argues that it has no continuing obligation to defend Extreme Residential in the underlying action. (Id.)

Prime first argues that the underlying action is excluded from coverage on the grounds that some of the claims made against Extreme Residential do not pertain to "Bodily Injury," as required by the policy. (Id. at 7.) Second, Prime argues that pursuant to Exclusions 2, 3(a), 3(b), 10, and 31, the claims in the underlying action fall outside of the scope of coverage. (Id. at 7-11.) Specifically, under Exclusion 2,[3] Prime argues that the claims in the underlying action are excluded from coverage because they are for bodily injury that arose within the scope of Extreme Residential's business or insured activities. (Id. at 7-8.) Under Exclusion 3(a),[4] Prime argues that the claims are excluded from coverage because they are brought by two

---

by an Occurrence that takes place in the United State, or such other location or territory specific in the Declarations or any Endorsement; and b. the Bodily Injury or Property Damage occurs during the Policy Period; and c. the Claim has been made against you within four (4) years of the Expiration Date or Cancellation Date of this Policy, whichever is earlier . . . and d. You have given written notice of the Occurrence and reported any Claim to the Insurer in accordance with the specific reporting requirements set forth in this policy.

(Prime Policy, attached as Ex. 1 to the Declaration of Lee M. Epstein, dated Oct. 7, 2022, Dkt. No. 114-10, at PRIME01279.)

[3] Exclusion 2 stipulates that the Prime policy does not cover, and therefore Prime is not obligated to defend or pay Damages for, "Bodily Injury to: a. Any Insured arising out of and in the course of the conduct of the Insured's business or insured activities; or b. The spouse, child, parent, brother, or sister of any Insured as a consequence of Bodily Injury to any Insured." (Id. at PRIME01280.)

[4] Exclusion 3(a) excludes from coverage "Bodily Injury or Property Damage: a. Alleged by one Insured against any other Insured . . . ." (Id. at PRIME01280-PRIME01281.)

insureds, two employees of Extreme Residential who were hurt in the scope of employment, against another insured—Extreme Residential.  (Id. at 8.)  Under Exclusion 3(b),[5] Prime argues that claims pertaining to negligence in maintaining a safe work environment are precluded from coverage.  (Id. at 9.)  Under Exclusion 4(a),[6] Prime argues that the claims brought by the Beechwood Entities and Atlantic Crane would be excluded from coverage to whatever extent there is a finding that these parties are additional insureds or otherwise insured under the policy.  (Id. at 9.)  Under Exclusion 10,[7] Prime argues that it is not obligated to pay damages—despite remaining silent on the duty to defend—for liabilities incurred under any contract or agreement, such as a rental agreement.  (Id. at 9-10.)  Under Exclusion 31,[8] Prime argues that any claim for punitive, exemplary, or statutory penalties or sanctions, whether imposed by law or otherwise,

---

[5] Exclusion 3(b) excludes from coverage "Bodily Injury or Property Damage: . . .b. Arising out of acts of the Insured or third-party general contractors, subcontractors, independent contractors, or property owners or their employees involving Claims or Suits alleging negligent hiring of employees or subcontractors, failure to contract with subcontractors, negligent supervision, or any liability relating to any independent contractor's service or failure provide service."  (Id.)

[6] Exclusion 4 excludes from coverage "Claims or Suits brought by: a. One Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates against another Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates[.]" (Id. at PRIME01281.)

[7] Exclusion 10 excludes from coverage "Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of assumption of liability under any contract or agreement" unless they are for damages that are "Assumed in a contract or agreement specifically approved by the Insurer by endorsement to [the Prime policy], provided the Bodily Injury or Property Damage occurs subsequent to execution of the contract or agreement[.]"  (Id. at PRIME01282.)

[8] Exclusion 31 excludes from coverage "Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise. . . . [Such claims] are not covered by the Policy regardless of whether they are demanded or awarded based upon the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable."  (Id. at PRIME01285.)

are excluded from coverage.  (Id. at 10.)  In sum, Prime argues that these exclusions foreclose its duty to defend as to any of the claims asserted against Extreme Residential in the underlying action.

As previously noted, an insurer's duty to defend is exceedingly broad under New York law – it arises "whenever the underlying 'complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased . . . .'"  BP Air Conditioning Corp. v. One Beacon Ins. Grp., 871 N.E.2d 1128, 1131-32 (N.Y. 2007) (emphasis added); see also Town of Massena, 779 N.E.2d at 167 ("it is immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions.").  An "insured's right to representation and the insurer's correlative duty to defend suits, however groundless, false or fraudulent, are in a sense 'litigation insurance' expressly provided by the insurance contract."  Servidone Constr. Corp. v. Security Ins. Co. of Hartford, 477 N.E.2d 441, 444 (N.Y. 1985).  Furthermore, "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course."  Cook, 850 N.E.2d 1152 at 1155.

Moreover, the burden on an insurer in avoiding its duty to defend based on an exclusion is heavy and requires a showing that a cited exclusion is "subject to no other reasonable interpretation" than the one put forth by the insurer.  Barney Greengrass, Inc. v. Lumbermans Mut. Cas. Co., 445 F. App'x 441, 413 (2d Cir. 2011).  Prime has failed to satisfy this heavy burden because, by the admission of Prime's corporate designee, whether certain exclusions upon which Prime relied to deny coverage would apply "depends on the conclusion of the case and the facts" in the underlying action.  (Extreme 56.1 ¶ 42; see also Prime Resp. to Extreme 56.1 ¶ 42.)

11

The claims in the underlying action contain facts or allegations that bring them potentially within the Prime Policy and Prime has failed to demonstrate that the exclusions it relied on to disclaim coverage are subject to no other reasonable interpretation.  Therefore, Prime has a duty to defend Extreme Residential in the underlying action and Extreme Residential's motion for partial summary judgment on this claim is granted.  Prime's motion for summary judgment on this claim is denied.

### B.  Coverage Disclaimer Under New York Insurance Law § 3420

Extreme Residential asserts that Prime is barred from denying coverage because it failed to timely disclaim coverage pursuant to New York Insurance Law § 3420(d)(2).  (Extreme Mem. at 11.)  Prime was notified of the Martins' accident the day after it occurred.  (Id.)  However, Prime did not disclaim coverage to Extreme Residential until March 11, 2020, two months after the underlying action was filed and nearly eight months after receiving initial notice of the Martins' accident.  (Id.)  Prime does not dispute this, but notes that it only learned of the underlying action on or about February 10, 2020, during its investigation of the Martins' accident.  (Prime's Statement of Material Facts as to Extreme Residential, filed Oct. 7, 2022, Dkt. No. 115-1, ¶¶ 39, 40.)  Prime contends that Section 3420 does not apply due to Extreme Residential's failure to timely notify Prime of the third-party complaints filed against Extreme Residential in the underlying action and that even if Section 3420 applies, Prime's disclaimer was timely.  (Prime Mem. at 10.)

In New York, an insurer is not obligated to disclaim coverage until an insured or additional insured provides notice of an accident or claim.  U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 360 (E.D.N.Y. 2006) (citing Roofing Consultants, Inc. v. Scottsdale Ins. Co., 709 N.Y.S.2d 782 (4th Dep't 2000)).  "Neither notice provided by another

insured nor the insurer's actual knowledge of the claim satisfies the contractual obligation of an insured to give timely notice." Roofing Consultants, 709 N.Y.S.2d 782.  A notice provision in a policy is a condition precedent to coverage; absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy.  See Travelers Ins. Co. v. Volmar Constr. Co., Inc., 752 N.Y.S.2d 286 (1st Dep't 2002) (citation omitted).  Where there is no excuse or mitigating factor for not giving notice, the question of reasonable notice is a legal determination. See id.

> The written notice provision of the Prime Policy states that:

> 1. As an express condition precedent to coverage under this Policy, you must give us immediate written notice, and without prejudicing our rights, of any incident, event, occurrence, loss, or accident which might give rise to a Claim covered by this Policy. 2. You and any other involved Insured must: a. Immediately, and without prejudicing our rights, send us copies of any demands, notices, summonses, or legal papers received in connection with any Claim or Suit, and act in all diligence and prudence to resolve the Claim or Suit . . . .

(Prime Policy at PRIME01291.)  Prime asserts that Extreme Residential never notified Prime of the third-party complaints that were filed against it in the underlying action and that this failure renders Section 3420 inapplicable.  (Prime Mem. in Opp. to Extreme at 9.)  However, by September 6, 2019, Prime had received a report from Dennis Brady, Esq., defense counsel retained on behalf of Extreme Residential, summarizing the salient facts concerning the underlying loss.  (Extreme Residential's Memorandum of Law in Opposition to Prime Insurance Company's Motion for Summary Judgment, filed Nov. 18, 2022 ("Extreme Mem. in Opp. to Prime"), Dkt. No. 128, at 18; see also Prime Claims Diary, attached as Ex. 11 to the Extreme Mem., dated Oct. 3, 2022, Dkt. No. 114-11, at 9.)

> There is no genuine dispute that Prime received notice of the Martins' accident from Extreme Residential, as Prime's Claim Diary clearly reflects receipt of the report from Extreme Residential's counsel concerning the Martins' accident.  (See Prime Claims Diary at 9.)

13

Therefore, Prime was subject to Section 3420's timely disclaimer requirement.  See Travelers Indem. Co. of Am. v. Estate of Zeygermakher ex rel. Sidon, 427 F. App'x 30, 32 (2d Cir. 2011) ("Our Court has held that an insurer's obligation to disclaim as to an injured party arises when the injured party provides notice of the occurrence to the insurer.")  Nevertheless, Prime argues that, even if Section 3420 applies, Prime's delay in disclaiming coverage is excused by its investigation.  (Prime Mem. in Opp. to Extreme at 5-6.)

Prime notes that its investigation was still ongoing at the time the underlying action was commenced and that Prime could not have known the basis for disclaiming coverage to Extreme Residential until claims were asserted against it.  (Id. at 8.)  However, as discussed above, although there is room for an insurer to conduct an investigation, the investigation must be prompt and the general rule is that "'disclaimers beyond the 30-day point are generally treated as untimely' unless the insurer establishes a suitable justification."  United Specialty Ins. Co., 375 F. Supp. 3d at 398 (citation omitted); see also First Fin. Ins. Co. v. Jetco Contracting Corp., 801 N.E.2d 835, 838 (N.Y. 2003) (finding the insurer's 48-day delay in giving written notice of the disclaimer was unreasonable as a matter of law and noting that "the Appellate Division several times has found fixed periods of less than 48 days unreasonable as a matter of law.").

Prime issued its disclaimer of coverage to Extreme Residential on March 11, 2020 – approximately 224 days after Prime became aware of the Martins' accident, 187 days after Extreme Residential's counsel sent a report to Prime concerning the accident, 163 days after Prime had retained coverage counsel to assist in its evaluation of all potential claims, and thirty days after Prime allegedly learned of the underlying action.  I find that Prime's delay in disclaiming coverage to Extreme Residential is unreasonable as a matter of law, and grant summary judgment on this issue in favor of Extreme Residential.

14

C.  Attorney's Fees and Costs

Extreme Residential seeks fees and costs incurred in connection with defending against Prime's third-party complaint.  (Extreme Mem. at 13.)  An insured who is "cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations," and prevails on the merits, is entitled to attorney's fees from the losing party. Mighty Midgets, Inc. v. Centennial Ins. Co., 389 N.E.2d 1080, 1085 (N.Y. 1979); see also U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 822 N.E.2d 777 (N.Y. 2004) (a prevailing insured cast in a defensive posture is entitled to attorney's fees).  An insured prevails on the merits where the court determines that the insurer has a duty to defend.  Am. Auto. Ins. Co. v. Sec. Income Planners & Co., 847 F. Supp. 2d 454, 466 (E.D.N.Y. 2012).

Prime asserts that Extreme Residential may not recover any attorney's fees incurred in the instant action unless it is successful in its claim for coverage against Prime. (Prime Mem. in Opp. to Extreme at 15.)  As discussed above, Prime has a duty to defend Extreme Residential in the underlying action.  Therefore, Extreme Residential is entitled to attorney's fees and costs incurred in connection with this action and summary judgment on this claim is granted in favor of Extreme Residential.  Prime's motion for summary judgment on this issue is denied.

**II.   Prime and Berkley's Cross-Motions for Summary Judgment**

Berkley moves for partial summary judgment declaring that Prime is obligated to defend the Beechwood Entities as additional insureds under the Prime Policy and that Prime is obligated to reimburse the defense costs incurred by Berkley in connection with the underlying action.  (Berkley's Memorandum of Law, filed Oct. 7, 2022 ("Berkley Mem."), Dkt. No. 116-2, at 1-3.)  Prime moves for partial summary judgment against Berkley for a declaration that,

15

because Extreme Residential would not be entitled to coverage on account of the exclusions to

coverage, the Beechwood Entities are likewise not entitled to coverage under the Prime Policy

and that Prime is not obligated to reimburse Berkley for amounts incurred in defending the

Beechwood Entities in the underlying action.  (Memorandum of Law in Support of Prime's

Motion for Summary Judgment, dated Oct. 7, 2022 ("Prime Mem. Against Berkley"), Dkt. No.

117-2, at 1.)

>
>      A.  Prime's Duty to Defend the Beechwood Entities

Berkley argues that the grant of additional insured coverage to the Beechwood

Entities under the Prime Policy is triggered by the allegations in the underlying action and the

Additional Insured Coverage provided by the Prime Policy.  (Id. at 2.)[9]  Additionally, Berkley

asserts that the allegations in the underlying action do not fall squarely within any of the

exclusions cited by Prime to afford Prime relief from its obligation to provide additional insured

coverage to the Beechwood Entities.  (Id.)

In determining whether one is an additional insured on an insurance policy, the

language of the policy around the scheduling of additional insureds governs.  See 140 Broadway

Prop v. Schindler Elevator Co., 901 N.Y.S.2d 292 (2d Dep't 2010) ("It is well settled that

whether a third party is an additional insured under a policy is determined from the intention of

---

[9] There is no dispute that: (i) the Beechwood Parties, except for Benjamin Beechwood Tides 2, LLC and Benjamin Averne II LLC, are specifically identified as Additional Insureds under the Prime Policy (Berkley's Statement of Material Facts, filed Nov. 18, 2022 ("Berkley 56.1"), Dkt. No. 116-1, ¶ 43; Prime's Statement of Material Facts as to Berkley Insurance Company, filed Oct. 7, 2022 ("Prime 56.1 Resp. to Berkley 56.1"), Dkt. No. 120, ¶ 43); (ii) the Prime Policy is a "project-specific" policy for the Tides Project at which the decedent and underlying plaintiff Iago Martins sustained their injuries (Berkley 56.1 ¶ 48; Prime 56.1 Resp. to Berkley ¶ 48); and (iii) once the Additional Insured coverage is triggered, the Prime Policy is primary and non-contributory to the coverage provided to the Beechwood Entities under the Berkley Policy. (Berkley 56.1 ¶¶ 44, 50; Prime 56.1 Resp. to Berkley ¶¶ 44, 50.)

the parties to the policy, as determined from the four corners of the policy itself.") (internal

quotes omitted).  Because an insurance policy is a contract between an insurer and an insured,

"the extent of coverage . . . is controlled by the relevant policy terms, not by the terms of the

underlying trade contract that required the named insured to purchase coverage." Bovis Lend

Lease LMB, Inc. v. Great Am. Ins. Co., 855 N.Y.S.2d 459 (1st Dep't 2008).

The Additional Insured Endorsement provision of the Prime Policy states:

> The "Who is a [sic] Insured" provision of the Policy shall be
> amended to include the person or organization scheduled in this
> Endorsement as an Additional Insured for the limited purpose of
> liability arising from Your Work, as that term applies to the
> Insured only, and subject to all other terms and conditions of the
> Policy and this Endorsement.  The coverage provided by this
> Endorsement only extends to cover the Additional Insured for
> allegations of liability based upon alleged, actionable conduct of
> the Insured and only to the extent the Insured would have been
> liable and coverage would have been afforded to the Insured under
> the terms and conditions of this Policy had such Claim been made
> against the Insured.

(Prime Policy at PRIME01321.)  Prime admits that the Prime Policy includes Additional

Insured Endorsements naming Rockaway, Ocean Way, and Averne as additional insureds

and that they qualify as additional insureds.  (Prime Mem. Against Berkley at 6-7.)

However, Prime maintains that Tides 2 and Benjamin Averne II, LLC ("Averne II") are

not entitled to coverage from Prime because they are not named in an Additional Insured

Endorsement.  (Id. at 7.)  This assertion runs counter to the evidence, which shows that

Daniel Tew, Prime's Assistant Vice President of Underwriting, confirmed that Tides 2

and Averne II would be included as additional insureds under the Prime Policy.  (See

Email from Daniel Tew to Michael Marquis, attached as Ex. K to the Beechwood

Entities' Statement of Material Facts in Support of Their Motion for Partial Summary

Judgment, filed Oct. 7, 2022, Dkt. No. 111-13; see also Beechwood Entities' Statement

of Material Facts in Support of Their Motion for Partial Summary Judgment, filed Oct. 7,

2022 ("Beechwood Entities 56.1"), Dkt. No. 111-1, ¶¶ 30-38; Prime's Statement of

Material Facts in Response to the Beechwood's Entities Statement of Material Facts,

filed Nov. 18, 2022, Dkt. No. 123, ¶¶ 30-38; Transcript of Daniel Tew Deposition,

attached as Ex. J to the Beechwood Entities 56.1, filed Oct. 7, 2022, Dkt. No. 111-12, at

108, 112-13.)  Based on the materials in the record, there is no genuine dispute that Tides

2 and Averne II should have been included as additional insureds under the Prime Policy.

I therefore find that Tides 2 and Averne II qualify as additional insureds under the Prime

Policy.

Finally, Prime argues that for the Beechwood Entities to qualify for

coverage under the Prime Policy, their liability in the underlying action must be based

upon the actional conduct of Extreme Residential and that coverage would have been

afforded to Extreme Residential.  (Prime Mem. Against Berkley at 7.)  Berkley asserts

that, because the underlying action contains numerous allegations involving the

Beechwood Entities' potential liability based on Extreme Residential's actionable

conduct, Prime owes the Beechwood Entities a duty to defend them.  (Berkley Mem. at

11.)  Specifically, Berkley argues that the allegations in the underlying action stem from

"actionable conduct" on the part of Extreme Residential in that (1) the Martins were both

employees of Extreme Residential; (2) the Martins were working within the scope of

their employment on a project for which Extreme Residential was the subcontractor at the

time of the accident; (3) Extreme Residential allegedly failed to provide a safe work

environment pursuant to New York Labor Law; and (4) Extreme Residential's

subcontract for the Tides Project noted that Extreme is "primarily and solely responsible for the safety conditions of its work areas . . . ."  (Id. at 6-8.)

Additionally, Berkley argues that none of the exclusions cited by Prime as precluding coverage to both Extreme Residential and the Beechwood Entities apply.  As previously discussed, Prime has failed to satisfy the heavy burden of avoiding its duty to defend based on an exclusion due to its admission that whether certain exclusions upon which Prime relied to deny coverage would apply "depends on the conclusion of the case and the facts" in the underlying action.  (Extreme 56.1 ¶ 42; see also Prime Resp. to Extreme 56.1 ¶ 42.)  I have already found that coverage must be afforded to Extreme Residential, and I further find that the Beechwood Entities' liability in the underlying action is based upon actional conduct of Extreme Residential and grant summary judgment on this claim in Berkley's favor.

B.  Reimbursement of Defense Costs to Berkley

Berkley contends that it is entitled to reimbursement for costs incurred in providing a defense to the Beechwood Entities in the underlying action.  (Berkley Mem. at 24.)  Prime argues that because the Beechwood Entities are unable to satisfy the terms of the Additional Insureds Endorsements in the Prime Policy and are therefore not entitled to coverage with respect to the underlying action, Berkley has no grounds to seek reimbursement of any of the costs it has incurred in defending them.  (Prime's Memorandum of Law in Opposition to Berkley's Motion for Summary Judgment, dated Nov. 18, 2022 ("Prime Mem. in Opp. to Berkley"), Dkt. No. 120-1, at 11.)  As discussed above, the Beechwood Entities are entitled to coverage in the underlying action.  Therefore, Prime's argument that Berkley may not seek reimbursement of defense costs on this ground does not apply.  Nevertheless, Prime further

argues that Berkley's status as a coinsurer precludes it from obtaining reimbursement from Prime.  (Prime Mem. Against Berkley at 9-12.)

Prime relies on case law stating that "courts have held that section 3420(d) is not applicable to a request for contribution between coinsurers."  Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co., 806 N.Y.S.2d 53 (1st Dep't 2005); see also Zurich Am. Ins. Co. v. Liberty Mut. Ins. Co., 710 F. App'x 3, 7-8 (2d Cir 2017) (there is a "litany of New York cases holding that § 3420(d) does not apply to claims between insurers.") (collecting cases).  Berkley counters that Prime's reliance upon Section 3420 is misplaced, in that it does not immunize Prime from having to reimburse post-tender defense costs after it received timely notice on half of the Beechwood Entities in the first instance.  (Berkley's Memorandum of Law in Opposition to Prime's Motion for Summary Judgment, filed Nov. 18, 2022 ("Berkley Mem. in Opp. to Prime"), Dkt. No. 126, at 15.)  Berkley's argument is supported by the same case law upon which Prime relies.  See Royal Surplus Lines Ins. Co., 806 N.Y.S.2d at 53 (holding that plaintiff insurer was entitled to obtain defense costs incurred from the date of the initial tender to defendant insurer); see also Tricon Constr., LLC v. Main St. Am. Assur., 2018 N.Y. Misc. LEXIS 3175, *7 (Sup. Ct. N.Y. Cnty. 2018) (establishing that because the insurer had a duty to defend, insurer also was obligated to reimburse defense costs); City of New York v. Continental Cas. Co., 2010 N.Y. Misc. LEXIS 1251, *17-18 (Sup. Ct. N.Y. Cnty. 2010) (allowing the reimbursement of "post-tender defense costs from the date first incurred").

Berkley states that defense of the Beechwood Parties for the underlying action was first tendered to Extreme Residential and Prime by Gerard Romski on August 5, 2019 ("August 5 Letter") and subsequently by Vela Insurance Services, on behalf of Berkley, by way of correspondence dated August 26, 2019 ("August 26 Letter").  (Berkley 56.1 ¶¶ 29, 30.)  Prime

did not provide its coverage position in response to the August 5 and August 26 Letters until

over six months later, through its litigation counsel, in a letter dated February 6, 2020.  (Id. ¶ 31.)

That letter communicated Prime's denial of coverage in response to the additional insured

tenders on behalf of the Beechwood Entities on various grounds.  (Id.)  Prime acknowledges that

it received notice of a "potential claim" from Berkley but argues that Berkley mischaracterizes

the August 5 and August 26 Letters to Prime as "tenders" because, as of the date the letters were

received, a "Claim" as defined by the terms and conditions of the Prime Policy had not yet been

made.[10]  (Prime's Statement of Material Facts as to Berkley, filed Oct. 7, 2022 ("Prime 56.1

Resp. to Berkley 56.1"), Dkt. No. 120, ¶¶ 30, 31.)

      The August 5 Letter states that "[d]emand is made upon you inter alia for

indemnification for any and all claims against all entities listed on the attached Certificate of

Insurance."  (August 5 Letter, attached as Ex. R to the Berkley Mem., filed Oct. 7, 2022, Dkt.

No. 116-21.)  The August 26 Letter states

> [p]lease allow this tender demand to serve as a follow up to [the]
> August 5, 2019 demand for tender of defense and indemnity of the
> Insureds for potential damages alleged by the estate of Jose Martin.
> . . . According to Extreme's Certificate of Insurance, Extreme
> maintained a commercial general liability policy with Prime
> Insurance Company, policy number SC190405080. . . . Pursuant to
> the terms of the contract and the certificate of insurance, we hereby
> tender defense and indemnification of the Insureds Extreme and its
> carrier Prime Insurance.  Kindly acknowledge receipt and
> acceptance of this tender demand in writing and have the assigned
> claims adjuster contact the undersigned.

---

[10] A "Claim" is defined by the Prime Policy as "any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding.  Coverage is only available for Claims which are both made against an Insured and reported in writing to the Insurer by the Insured within four (4) years of the Expiration Date or Cancellation date of this Policy, whichever is earlier."  (Prime Policy at PRIME01296.)

(August 26 Letter, attached as Ex. S to the Berkley Mem., filed Oct. 7, 2022, Dkt. No. 116-22.)

Prime's response to these letters specifically states that "[w]e interpret such letter[s] as a request

that Prime defend and indemnify Benjamin Beechwood Ocean Way, Rockaway Beach Blvd.

Construction Co., Arverne by the Sea, Beechwood Avenue, LLC, Benjamin Arverne II, LLC,

and Benjamin Beechwood Tides 2, LLC from 'potential damages alleged' (i.e., potential claims

on behalf of) Mr. Martins' estate."  (February 6, 2020 Letter, attached as Ex. T to the Berkley

Mem., filed Oct. 7, 2022, Dkt. No. 116-23.)

The evidence before the court does not support Prime's argument that Berkley has

mischaracterized the August 5 and August 26 Letters to Prime as "tenders."  Prime specifically

indicated that it interpreted the August 5 and August 26 Letters as requests for defense.  Because

I have found that Prime has a duty to defend the Beechwood Entities, I further find that Prime is

obligated to reimburse Berkley for post-tender defense costs.

### III.    Prime and the Beechwood Entities' Cross-Motions for Summary Judgment

The Beechwood Entities move for partial summary judgment declaring that (1)

Prime must defend them as additional insureds in connection with the underlying action and

under the terms of the Prime Policy; (2) Prime is statutorily estopped under New York Insurance

Law § 3420(d)(2) from disclaiming coverage to the Beechwood Entities and Extreme

Residential; (3) the coverage afforded to the Beechwood Entities under the Prime Policy is

primary and noncontributory in relation to any other coverage available to them, including under

the insurance policy issued by Berkley; and (4) Prime must pay the reasonable attorney's fees

and costs that the Beechwood Entities have incurred in this action.  (Notice of Motion for Partial

Summary Judgment, filed Oct. 7, 2022, Dkt. No. 111.)  Prime moves for partial summary

judgment declaring that it is not obligated to provide insurance coverage to the Beechwood

Entities.  (Prime Mem. Against Berkley at 1.)

I have already found that Prime owes the Beechwood Entities a duty to defend them in the underlying action and that Prime is estopped from disclaiming coverage under Section 3420.  Furthermore, there is no dispute that once the Additional Insured coverage is triggered, the Prime Policy is primary and non-contributory to the coverage provided to the Beechwood Entities under the Berkley Policy.  (Berkley 56.1 ¶¶ 44, 50; Prime 56.1 Resp. to Berkley ¶¶ 44, 50.)  Finally, Prime chose to implead the Beechwood Entities into this declaratory judgment action, thereby placing them in a defensive posture by compelling them to litigate their right to a defense in the underlying action.  Therefore, because the Beechwood Entities are entitled to a defense in the underlying action, they are also entitled to reasonable attorney's fees and costs incurred in defending this action.  Summary judgment is granted in favor of the Beechwood Entities on these claims.

## IV.  Prime and Atlantic Crane's Cross-Motions for Summary Judgment

Atlantic Crane moves for partial summary judgment seeking an order that (1) Prime has a duty to defend it in the underlying action; (2) Prime must reimburse Atlantic Crane's post-tender defense costs incurred in the underlying action; and (3) Prime must pay Atlantic Crane's costs and fees incurred in this action.  (See Memorandum of Law in Support of Atlantic Crane's Motion for Partial Summary Judgment, filed Oct. 7, 2022 ("Atlantic Crane Mem."), Dkt. No. 112-3, at 1.)  Prime moves for summary judgment against Atlantic Crane seeking an order declaring that Prime is not obligated to provide insurance coverage to Atlantic Crane because it is not an additional insured under the Prime Policy.  (See Memorandum of Law in Support of Prime's Motion for Summary Judgment Against Atlantic Crane, filed Oct. 7, 2022 ("Prime Mem. Against Atlantic Crane"), Dkt. No. 118-2, at 1.)

As discussed above, to determine whether an entity is an additional insured under a policy, the court must look to both the policy and the underlying contract entered into between the parties.  See generally, Greater New York Mut. Ins. Co. v. Mut. Marine Office, Inc., 769 N.Y.S.2d 234 (1st Dep't 2003) (when roof of building collapsed, owner was not entitled to additional insured coverage from parking garage operator lessee, as lease did not require lessee to maintain the structure of the building and the policy limited additional insured coverage to operations performed by or on behalf of the insured lessee).  It is not, however, the underlying contract terms that determines whether coverage under the insurance policy is triggered.  See AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc., 961 N.Y.S.2d 3 (1st Dep't 2013) (noting that the express language of the additional insured endorsement was restricted to its plain meaning).  Instead, it is the terms of the insurance policy that control.  See Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire and Mar. Ins. Co., 38 N.Y.S.3d 1, 4 (1st Dep't 2016), aff'd, 31 N.Y.3d 131 (N.Y. 2018).

At the core of Prime and Atlantic Crane's cross-motions is a rental agreement that Atlantic Crane entered into with Extreme Residential on July 29, 2019, under which Atlantic Crane leased a crane, an operator, and an oiler to Extreme Residential for the Tides Project. (Memorandum of Law of Atlantic Crane in Opposition to Prime's Motion for Summary Judgment, dated Nov. 18, 2022 ("Atlantic Crane Opp."), Dkt. No. 125, at 1.)  This rental agreement contained several provisions that Atlantic Crane believes created a "reasonable expectation" on Atlantic Crane's part of additional insured coverage under Extreme Residential's insurance policy.  (Id.)  For example, the agreement contained an indemnification clause that Extreme and/or its subcontractors agree to indemnify, hold harmless and defend Atlantic Crane for claims for death or injury arising out of the Tides Project.  (Id.)  Additionally, the agreement

contained an insurance provision that stated that Atlantic Crane will "be included as additional insureds on all liability insurance policies including excess/umbrella policies."  (Id. at 8.) Atlantic Crane argues that these provisions in the rental agreement gave rise to a "legitimate expectation" that Extreme Residential would secure additional insured coverage for the crane services performed at the Tides Project.  (Id. at 24.)

Atlantic Crane acknowledges that "the matter concerning Atlantic Crane is slightly different [from the other parties to this action] because Atlantic Crane has acknowledged that there's not an actual specific additional insured endorsement within the Prime policy under which Atlantic would qualify without condition[.]"  (Tr. at 27.)  However, Atlantic Crane maintains that "by Prime's own paperwork that has been submitted, Prime has taken a position that Atlantic Crane potentially would qualify . . . under what's known as a general change endorsement in the Prime policy that's attached as Exhibit G to Atlantic's moving papers[.]"  (Id. at 28.)  Prime counters that the absence of an Additional Insured Endorsement naming Atlantic Crane dictates that there can be no additional insured coverage to Atlantic Crane under the Prime Policy.  (Prime Mem. Against Atlantic Crane at 6.)  Specifically, Prime argues that "[i]n making its claim for coverage, Atlantic improperly ignores the terms of the Prime Policy and appears to rely solely on Extreme Residential's alleged contractual obligation to provide such coverage to Atlantic. . . . [T]he fact that Extreme Residential may have been required to name Atlantic an additional insured is of no moment given the Prime Policy language."  (Id.)

As previously discussed, the Additional Insured Endorsement of the Prime Policy clearly requires that "only those scheduled in the Additional Insured Endorsement are additional insureds, subject to the terms, conditions, and exclusions of the endorsement and Prime Policy." (Id. at 6.)  Atlantic Crane's reliance on the General Change Endorsement is misguided, as the

policy clearly states that no entity is considered an additional insured unless Prime confirms "whether it agrees to provide additional insured coverage by way of an additional insured endorsement which will specify the terms of coverage."  (Prime's Memorandum of Law in Opposition to Atlantic Crane's Motion for Summary Judgment, ("Prime Opp. to Atlantic Crane"), filed Nov. 18, 2022, Dkt. No. 121-1 at 7 (citing Prime Policy at PRIME01315.))

    The existence of a term in an underlying trade agreement requiring that the party be added to a named insured's policy is irrelevant under New York law, as it is the intention of the parties to the policy—not the intention of the parties to the rental agreement—that controls whether coverage has been extended to an additional insured.  Therefore, Atlantic Crane does not qualify as an additional insured under the Prime Policy as a matter of law and is not entitled to a defense from Prime in the underlying action.  Summary judgment is granted in favor of Prime, and Atlantic Crane's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, I find that (1) Prime has a duty to defend Extreme Residential in the underlying action; (2) Prime's delay in disclaiming coverage to Extreme Residential was unreasonable as a matter of law and it is therefore estopped from disclaiming coverage under Section 3420; (3) Prime must pay Extreme Residential's reasonable attorney's fees and costs incurred in defending this action; (4) Prime has a duty to defend the Beechwood Entities in the underlying action; (5) Prime must reimburse Berkley for post-tender defense costs incurred in the underlying action; (6) Prime must pay the Beechwood Entities' reasonable attorney's fees and costs incurred in defending this action; and (7) Prime does not have a duty to defend Atlantic Crane in the underlying action.

SO ORDERED.

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated:  Brooklyn, New York
        July 18, 2023